Alright, our first case for admission, our first case for argument today, 24-2132 Slingshot Printing v. Canon. Counsel, how do I say your name? Guy Yumi, Mr. Guy Yumi. Guy Yumi? Yeah. Please proceed. Thank you, and may it please the court. The claims require a vent conduit for removing air from the exit port of an ink cartridge and expelling it out to the atmosphere. The board found that limitation anticipated by a reference that discloses exactly the  vent conduit that channels air from the atmosphere to the exit port. That finding cannot stand. For support, the board relied on a single sentence in Studer 708, in fact, a fraction of a sentence. At Appendix 11, the board quoted Studer's statement that it, quote, vents a fluid container to ambient air, even italicizing to, so as to emphasize direction, to find the limitation disclosed by Studer 708. Now, that finding is undeniably wrong. Canon's expert, Dr. Pond, at first tried to make the same point in his declaration. At Appendix 779, he added the word externally in brackets, he italicized to, and also tried to say the same thing as the board, suggesting that Studer discloses a direction of airflow as consistent with the claims. But he then disavowed that interpretation in his deposition. At Appendix 941 to 42, he testified that he never meant to say that the passage in Studer discloses a direction of airflow. He meant instead that there's a vent, quote, at the outside world, external to the tank. That's it. The rest of the board's analysis cannot support anticipation either. It relies on Dr. Pond's testimony about his view of what necessarily happens under certain pressure and temperature conditions and according to the laws of physics. But that testimony is irrelevant to express anticipation. As this court made clear in Scripps, for example, resort to extrinsic evidence like expert testimony cannot be used to gap fill. It is limited to educating the decision maker as to what the reference meant to scolarticins cannot be used to fill gaps in references. Isn't the board just simply finding that if you have a vent that everyone agrees lets air go in, it can also inevitably will necessarily let air go out as well. But I have two points to that. The first is that the fact that air could go in and out of the vent in the cover is not alone sufficient to meet the claims. The claims require a vent conduit that extends all the way from the exit port to the cover so that it can expel air from the exit port through that vent conduit to the outside atmosphere. The board's, whatever the board is finding here about what happens at the vent itself, the vent in the cover, that limited part of the vent conduit, doesn't actually support a finding that that entire vent conduit as claimed is anticipated. And so, the second point. Is there something in dispute about the vent conduit other than whether air would go out of it as well as in it? No, no. I guess to clarify slightly, no. The dispute is about whether air will flow in the claim direction in the vent conduit. And the point I'm making, Your Honor, is that the vent at the top, if air goes in and out of the vent at the top, that's not enough. That vent at the top is actually open to the entire ink cartridge and studer. Now it's also an airflow communication with the rest of the vent conduit. But air going into the vent does not mean air actually goes all the way to the exit port. Air going out of the vent does not mean that air goes all the way from the exit port and out of the vent. All the board's finding could support is the idea that air can flow in and out of that vent in the top. And that alone is not enough to anticipate. Can you help me understand why that's so, where it says for removing air adjacent to the fluid exit port? Yes, Your Honor. So, there's no dispute here that the claims require an apparatus that is capable of channeling air from the exit port. So, there are these air bubbles that form the exit port, channeling that air along the vent conduit and out through the top of the ink cartridge. And so, if you turn to, for example, I think a figure might be helpful here. If you look at Blue Brief 13. Right, I think what might be helpful is thinking about this limitation in terms of the prior art. I mean, the dispute is whether the prior art teaches this limitation, right? Absolutely. So, looking at the prior art, why doesn't, why wouldn't the prior art teach removing air adjacent to the fluid exit port, even if there was a contemplation that you'd want to have it removed from elsewhere? So, the prior, so Studer teaches over and over again that it is channeling air from outside the atmosphere to the exit port. And so, I can, I can direct you. I do know that. We're just talking about that one sentence that you're saying is flimsy, I guess, right? And so, I'm trying to understand from the board's perspective why that sentence wasn't enough because, frankly, if the patent actually teaches it, it doesn't matter how many sentences it's in. But, so, that's what I'm trying to figure out. Yes, John. So, I think the point is the board, I think, misread that passage. As Dr. Pond conceded, that passage does not disclose the direction of airflow. It does not disclose air flowing outwards from the exit port to the outside world. All it discloses, at best, is a vent located on the surface of the cartridge. And that's only a small fraction of the vent conduit. The claimed vent conduit has to go all the way from the exit port. And so, this is why I think the figure in Studer is helpful. The figure on, for example, Blue Brief 13, which we've annotated, it depicts the entire vent conduit that is, that Canon has identified as the vent conduit. As you can see, there's this, the red part on the top, that's the vent in the lid. The other parts of the vent conduit are what's highlighted in green, so along the sidewall, along the floor channel, and then what's highlighted in purple, which is by the exit port. And so, for air to, for the limitation to disclose a vent conduit for removing air, it has to disclose a vent conduit that can channel air from that purple spot right there by the exit port, all the way along the green channel on the floor, all the way along the green channel on the sidewall, and all the way out the top of the vent. All the board has found is that there's a vent in the top that air can go in and out of. But again, Studer is actually quite clear as to what that vent in the top is doing. If your honors could turn to, and bear with me, I'm finding the site. The full passage is at appendix 581, column seven, line 39 through 43. And the full sentence that the board is pointing to is, venting a fluid container to ambient air with a vent located in the upper portion of the container. So, all it's saying is there's a vent in the top, okay? And then it says, internally venting the container to channel air from the ambient air vent to an internal location adjacent to the fluid interconnect port. So, this reference is disclosing not channeling air away from the fluid interconnect port, but channeling air to the interconnect port. Now, if your honors have no further questions on the express disclosure of Studer, I'm happy to turn to the inherency theory that Cannon has defended on appeal. The problem with that theory is the petition did not raise inherency, and the board did not find inherency. So, under core photonics, under itinerary, any inherency finding is foreclosed. I couldn't find inherency in the petition, but I also didn't see you arguing below that inherency was not in the petition. Is that correct, and what do I do with that? Not quite. So, I think if you turn to appendix 235, this is our patent owner response. We say there that petitioners, quote, do not even attempt to show, close quote, and then we describe the requirements for inherency. So, we're saying that the petitioner is not attempting to show inherency. You say inherency is not in the petition? To be pretty easy to say. No, not exactly in that phrasing. But if you then look at the petitioner reply, the petitioner reply then actually raises the inherency theory, cites inherency cases, it actually defends an inherency theory. And then in our serve reply, we say at appendix 301, that the inherency argument is, quote, improper. So, I think— The board didn't rely on inherency, did it? No, I agree, Your Honor. But I think the point is the board's reliance on Dr. Pond's testimony about the laws of physics and what happens based on certain temperature and pressure conditions is an inherency theory. That's not interpreting words in Studer. That theory, just like in LBT, for example, is a situation where an expert is testifying, purporting to testify about what a scholar would understand, but is actually gap filling. Studer does not say that error goes in the claimed direction at any point. How do we know? I mean, so, you're not disputing that the board properly could rely on that testimony from Dr. Pond. Your view is that the only way to interpret Dr. Pond's testimony is to understand that it supports an inherency theory, right? Yes. So, I— And that inherency wasn't argued, and therefore, it can't be relied on. Correct. And also, I think inherency fails on the merits for several reasons. But I think that's exactly right. So— It doesn't matter whether you think it fails on the merits. You've just told us we can't address it one way or the other because the board didn't address it, right? So, if we think there is the need to reach that issue, we have to send it back. We can't be the ones to do that in the first instance.  I think a remand would be entirely appropriate. I will say that, you know, if no substantial evidence could support an inherency finding, the court could choose to dispose of that issue. But I think a remand would be entirely appropriate in the event that the court understands those arguments to be rooted in inherency and that the board did not find inherency. And that's, again, setting aside the court photonics issue of whether or not inherency is in the petition as well. And I would like to just briefly turn to obviousness before I run out of time. So, I don't think obviousness could provide a basis for affirmance either. If you look at the board's decision at Appendix 15, the board at no point finds that the obviousness ground actually fixes the anticipation problem with this airflow limitation. What the board says is, we agree with Petitioner that the combined Studer 708, Studer 471 system teaches the additional elements and dependent claims 2, 6, 7, 11, 15, and 16. At no point does it mention the airflow limitation. So, the obviousness ground does not fix the problems that are present in the anticipation holding. And so, if anticipation is vacated and remanded, it would also require vacating and remanding on the obviousness ground. It's not an independent basis for affirmance. Okay. Why don't we save the rest of your time for Robusta. Thank you. Thank you, Your Honor. And may it please the Court. Air flows from high pressure to low pressure. And as Cannon's expert credibly testified, skilled artisans would interpret Studer 708's design as disclosing an internal vent conduit capable of moving air in both directions. So, just to be clear, you're saying Dr. Pond's testimony was that it was actually disclosed, not just that it's inherent from. Yes, that is correct. Do you think that Dr. Pond rejected his reading during his deposition, that he rejected his reading of the reference or modified it? I do not. His testimony was entirely consistent with his reading. He explained that that specific passage in Studer is just describing the vent, but that a skilled artisan would understand in reading that passage that it suggests that air will flow in both directions because there's nothing that would stop the airflow in either direction. That's something that is undisputed. Slingshot's expert, Mr. Deagle, agreed that it's a hole and that air will flow one way or the other depending on high and low pressure. So, all that Dr. Pond was doing was explaining what the reference suggests to a skilled artisan, which is consistent with his opinion. And that's the test for anticipation. I'm going to point this Court to its recent memory web decision. It's a non-prec decision that addresses this issue where someone tried to argue, no, no, that should really be an inherency theory. And this Court explained that when a reference suggests what's going on from the viewpoint of a skilled artisan, testimony about that is relevant to the anticipation analysis. And that's exactly what Dr. Pond was saying here. Do you think this claim requires that there be air removed all the way from the cover to the exit end? So, the limitation says that it's for removing air adjacent to the fluid export and releasing the air through the cover to said atmosphere. So, the air needs to be adjacent to the fluid exit port and then go through the cover to the said atmosphere. But Mr. Deedle testified that there is airflow between the vent. So, this issue that was pointed to, I believe, on the brief, on the blue brief, page 13, where we see the picture of the vent and the arrows showing the direction that they're reading the reference to disclose. There's nothing preventing air from flowing the other way. And that's something that Mr. Deedle conceded. And he conceded that on appendix page 1128 and 1143. So, there's no, basically, an admission that air flows in the red portion from one direction to the other on appellant's brief on page 13 is an admission that air will flow the whole way. And that's exactly what Dr. Pond testified. The fact that Studer's 708's focus is on air flowing in the other direction doesn't mean that it lacks disclosure of airflow in the direction that we're demonstrating. Because a reference can anticipate a claim even if it doesn't expressly spell out the limitations or arrange them in that way as long as a skilled artisan would read the reference and understand it. And the board recognized that Studer's overall emphasis on venting air towards rather than away from its fluid interconnect port doesn't undermine this assertion that the system vents in the opposite direction. And it credited the testimony and evidence from Dr. Pond as well as Studer's own disclosure. You've been talking about Studer's 708 and anticipation so far, correct? If we didn't agree that there was substantial evidence for the board's reading of Studer's 708, you've suggested there's an alternative finding from the board that Studer 471 taught the airflow. I didn't see that. Can you show me where that is? Yeah, so it comes from appendix page 13. And we see in the, as the board introduces Studer 471, petitioner relies on Studer 471 for teaching that air may flow upward toward the lid portion. So remember, the internal vent conduit is undisputed in Studer 708. So the only question is the direction of airflow. Here, we have the board acknowledging the argument that we've made that the air will flow in the proper direction. Then we go to appendix page 15, where it says that the board is basing its findings on petitioner's analysis as outlined above. Now that's referring to this section, including the analysis of the air. So that's the basis for the alternative finding, that even if you don't agree that there's substantial evidence for supporting Studer 708, Studer 471 fills that gap. And the board found all the challenge claims were obvious. Is that right? And only a subset were anticipated? Correct. Do you agree with opposing counsel's argument that if we do not agree with you on anticipation and inherency, whatever, all of that, that we have to vacate and remand to obviousness? It does seem to me that the board's fact findings on obviousness hinged on their determination on anticipation. So we disagree for the reasons that I just discussed with Judge Stark, which is that you can turn to the disclosure in Studer 471 which discusses the fact that air will flow in the proper direction. So you can take that combined with the event in Studer 708. And that's an obviousness finding that the board made based on the language that I pointed to on appendix page 15, combined with the language on appendix page 13. Can you help me with your position on inherency? As I understand it, you don't actually say inherency in the petition. You do in your reply below. The board doesn't rely on it, but yet you offer it as an alternative for us to affirm here. Do I understand the data points correctly? And if so, can we really do that? Almost. What happened was we didn't explicitly raise inherency in the petition. In response, they brought it up. So we replied to it. And the SIR reply, they mentioned it again. There's a lot of briefing on this issue. It was mentioned again before the board during the oral argument. And then we don't think the board relied on inherency. So to us, that concludes the issue, right? If the board didn't rely on it. It's not in front of us.  But because they raised it again in their appellant's opening brief, we responded to it. So we don't think that the board, that the court needs to reach that issue because we think this is an express disclosure. Do you think we can reach it? Could we affirm on the alternative grounds of inherency under that regime that you just laid out? We explained that there's enough evidence that there couldn't be a finding any other way in our brief. So you could. But another alternative would be to remand for that finding. But again, there's just no need to do that because this is an explicit disclosure. Again, referring to this court's memory web opinion and how this court has interpreted what a reference suggests to a skilled artisan. This testimony here from Dr. Pond is clear about what the reference suggests. It suggests movement in both directions. And Mr. Dietl agreed with that. He agreed that air will flow in either direction. There's no dispute that there will be operating circumstances with these ink cartridges where the pressures will change. There's testimony about that on appendix page 768 from Dr. Pond. And that would cause these pressure differences that would cause air to go out. And I also want to hit on the concession that the claims only cover capability. Can I ask you just one thing real quick, which is that an inherency, if it's not in your petition, right, then the only thing we can do is look at whether there's express disclosure, one person of ordinary skill in the art would understand this as being an express disclosure, right? I think you'd have to remand to the board at that point because it's up to the board as to whether or not how they want to enforce their procedural rules. You mean how they would read the petition? Exactly. Because we don't have their opinion on that because they didn't address inherency. But obviously the board, or the parties addressed it throughout the briefing. They had noticed an opportunity to be heard on inherency. So there wasn't a direct APA violation. So then it comes down to how the board would want to read the petition and understand. So I just want to hit on the capability concession because that is important and something that is not given proper attention in the other side's briefing, which is that the claims only require that the reference be capable or the combination be capable of allowing error to flow in the proper direction. So there's no dispute that that's the case because as long we have, again, Mr. Dietl's testimony on appendix page 1073, that event is a hole and error can go in and out of that hole. That is capability. So we have testimony from both experts that Studer 708 is capable. I also want to hit on- As a claim construction issue, are you saying that the claim has been construed to just require capability? The parties agreed on that. So there wasn't a need for a construction, but that is how the parties are interpreting the claim. So Studer 471 is also part of the combination with Studer 708, and the board explained, I think, very well why Skilled Artisan would have been motivated to make that combination. It explained that the motivation comes directly from Studer 708 itself, which teaches that additional vent channels may be necessary when using alternative capillary materials like polyurethane foam or melamine. That's what the board relied on in finding its motivation to combine. It also looked at the fact that these references are from the same area. They're both directed to capillary-filled ink containers that are removably connected to a printhead, and more specifically to managing the air pressure and air pockets within the capillary-filled ink materials. So there's no question that a skilled artisan would look and combine these two references. I read arguments about teaching away in the briefs. I didn't hear any questions about that, so I'm happy to address that argument if the court has any questions about it. I'm also happy to address the remaining complaints about how the board treated the unchallenged limitations, but we addressed that in the 20HA letter. I think it's been briefed, so I'm happy to rest on the briefs with that as well, unless the court has any questions. Okay, thank you, Ms. Koldenberg. I'm keeping your name wrong. Sorry about that. Okay, counsel, you have some rebuttal time.  I'd like to just quickly address a couple of points on express anticipation. Eli Lilly, In-Rae Hughes, Wasika are all very clear that for express anticipation, you need a clear disclosure, a definite disclosure of the limitation in the reference. If the reference is ambiguous, it can't anticipate. And so, insofar as Studer is ambiguous, insofar as that statement that the board relied on cannot support an anticipation finding, I don't think it's ambiguous, but I just wanted to quickly address that. On the capable of aspect of the limitation, still, the reference has to disclose that it's capable of the required function. Here, the only thing Mr. Dietl admitted was that air can go in and out of the vent in the top. He did not admit that air could actually go all the way from the exit port and out through the vent in the top. That's all Mr. Dietl admitted. That's not enough to satisfy the claims. Certainly not a clear and definite disclosure for removing air from the exit port to the atmosphere limitation. On obviousness, there really is no alternative finding by the board that the obviousness ground supplies support for a direction of airflow. Again, the passage that my friend on the other side pointed to on appendix 13 is only quoting Cannon's argument. And then if you look at, and all it says, by the way, is that Souter 471 teaches that air may flow upward to the lid portion. That's still not a teaching of the claims, which requires, again, from the exit port through the conduit throughout the lid. But even setting that aside, the board did not adopt that argument. All it said at appendix 15, twice on that same page, at the start of the paragraph and at the end, is that the obviousness ground teaches the additional limitations, sorry, the additional elements in dependent claims 2, 6, 7, 11, 15, and 16 does not address airflow at all. So that cannot support a basis for affirmance. And if you even look behind the hood and look at Cannon's petition in the briefing below, Cannon didn't even argue that in the alternative, this combination actually somehow reverses airflow. All that Cannon said was that at appendix 93, that using the sidewall channels from Souter 471 would continue to allow Souter 708's airflow. Didn't say in the alternative, if you don't think Souter discloses the claim direction of airflow, this actually makes airflow better or allows for more airflow. It just said it continues to allow airflow. And the reason for that is the design of Souter is a bonded polyester fiber that has an end grain. And if you swap that out for foam, there's no more end grain. There's no path for air to flow through. And so that's why you need the sidewall channels. And Souter 708 even says that the only reason you would put in sidewall channels is to continue to allow air to flow if you swap out foam instead of the capillary material. So there's no evidence below even that the obviousness ground could fix the airflow problem with the anticipation ground. Thank you, Congress. Okay. With council, this case is taken under submission.